# Litigation Authority of the Equal Employment Opportunity Commission in Title VII Suits Against State and Local Governmental Entities

In general, the Attorney General has plenary authority over the supervision and conduct of litigation to which the United States is a party. Courts have narrowly construed statutory grants of litigation authority to agencies to permit the exercise of such power only when the authorizing statutes are sufficiently clear and specific to ensure that Congress intended an exception to the general rule.

The litigation authority of the Equal Employment Opportunity Corporation (EEOC) is limited by statute to suits brought on behalf of private sector employees. 42 U.S.C. §§ 2000e-4 to 2000e-6. Furthermore, litigation authority for Title VII "pattern or practice" suits against State and local government entities is specifically vested in the Attorney General.

To permit the EEOC, an executive agency subject to the authority of the President, to represent on its own behalf a position in court independent of or contrary to the position of the United States, would be inconsistent with the constitutional principle of the unitary executive.

March 13, 1983

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL,
CIVIL RIGHTS DIVISION

This responds to your request for the opinion of this Office regarding the litigation authority of the Equal Employment Opportunity Commission (EEOC) in suits brought against state or local governmental entities to enforce Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1976), as amended. Your question arises in the context of litigation brought in the United States District Court in Louisiana by a class of black applicants and members of the New Orleans Police Department against the City of New Orleans, the New Orleans Civil Service Commission (CSC) and various municipal and CSC officials, seeking redress from injuries suffered due to alleged racially discriminatory policies in the selection, training and promotion of city police officers.[1] Following pretrial settlement discussions, the parties moved jointly for the court's approval of a proposed consent decree in settlement of the plaintiffs' claims. The district court denied approval of the decree on the ground that "the proposed quota exceeds its remedial objectives while seriously jeopardizing the career interests of nonblack officers," and encouraged the parties to resub-

[1] See Williams v. City of New Orleans, 543 F Supp 662 (E.D. La. 1982), rev'd and remanded, 694 F.2d 987 (5th Cir. 1982).

mit a decree "propos[ing] further measures that the parties deem appropriate, so long as they are precise, remedial in nature, and attentive to the interests of third parties." 543 F. Supp. at 686.

On appeal, the U.S. Court of Appeals for the Fifth Circuit reversed, holding that the district court's rejection of the proposed consent decree on the stated grounds constituted an abuse of the court's discretion, and remanded with instructions to enter the decree. We understand that, pursuant to 42 U.S.C. §§ 2000e-5(f)(1)[2] and 2000h-2,[3] the Attorney General has certified that this case is "of general public importance" and has moved the Court of Appeals for permission to intervene, on behalf of the United States, as a party-appellee, for the purpose of filing a suggestion for rehearing en banc. We understand further that the EEOC is prepared to petition the court for leave to present, in some capacity,[4] views of the Commission which are independent of, and possibly contrary to, those presented by the Attorney General. You now seek the advice of this Office as to whether the EEOC has authority to make such an appearance.

We believe that, as the following discussion makes clear, the EEOC's litigating authority under Title VII of the Civil Rights Act is limited to the enforcement of claims against private sector employees. This conclusion is supported by the very terms of the enforcement provisions of Title VII, 42 U.S.C. §§ 2000e-5, 6, as well as the legislative history of those provisions. In addition, the more general constitutional and statutory considerations investing the Attorney General with the responsibility for the conduct of all litigation on behalf of the United States, would, in any event, counsel against a construction of the EEOC's litigating authority that would permit it, as an Executive Branch agency subject to the supervision and control of the President, to appear independently and on its own behalf, in opposition to positions advanced by the Attorney General, on behalf of the United States.

## I. General Considerations

All questions of the litigating authority of Executive Branch agencies and departments must begin with a recognition of the Attorney General's plenary authority over the supervision and conduct of litigation to which the United

---

[2] Section 2000e-5(f)(1) provides in pertinent part:
> Upon timely application, the court may, in its discretion, permit the Commission, *or the Attorney General in a case involving a government, governmental agency, or political subdivision*, to intervene in such civil action upon certification that the case is of general public importance.
(Emphasis added.)

[3] Section 2000h-2 provides:
> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be entitled to the same relief as if it had instituted the action.

[4] It is unclear whether the Commission seeks to present its views as an *amicus curiae* or as an intervening party-appellant. Because we conclude that the Commission lacks the authority to appear on its own behalf in any public sector Title VII litigation, the distinction between intervention and *amicus* appearances is without significance to the consideration and resolution of this issue.

58

States, its agencies and departments, or officers thereof, is party. This plenary authority is rooted historically in our common law and tradition, *see Confiscation Cases*, 74 U.S. (7 Wall.) 454, 458–59 (1868); *The Gray Jacket*, 72 U.S. (5 Wall.) 370 (1866); and, since 1870, has been given a statutory basis. *See* 28 U.S.C. §§ 516, 519.[5] *See generally United States* v. *San Jacinto Tin Co.*, 125 U.S. 273 (1888). The rationales underlying this grant of plenary authority to the Attorney General are many, the most significant of which is the need to centralize the federal litigation functions under one authority to ensure: (1) coordination in the development of positions taken by the Government in litigation, and consideration of the potential impact of litigation upon the Government as a whole; and (2) the ability of the President, as head of the Executive Branch, to supervise, through the Attorney General, the various policies of Executive Branch agencies and departments as they are implicated in litigation. Because of his government-wide perspective on matters affecting the conduct of litigation in the Executive Branch, the Attorney General is uniquely suited to carry out these functions. *See United States* v. *San Jacinto Tin Co.*, 125 U.S. at 27880. *See also Report of the Attorney General's Task Force on Litigating Authority* (Oct. 28, 1982)); *Memorandum for the Attorney General re: The Attorney General's role as Chief Litigator for the United States*, 6 Op. O.L.C. 47 (1982).

Notwithstanding Congress' determination that the litigating functions of the Executive Branch be generally centralized in the Attorney General, the Attorney General's "plenary" authority over litigation involving the United States is limited to some extent by the "except as otherwise authorized by law" provisions contained in §§ 516 and 519. Nevertheless, mindful of the considerations supporting such centralization, the courts have narrowly construed statutory grants of litigation authority to agencies in derogation of the responsibilities and functions vested in the Attorney General to permit the exercise of litigating authority by agencies only when the authorizing statutes are sufficiently clear and specific to ensure that Congress indeed intended an exception to the general rule. *See, e.g., Case* v. *Bowles*, 327 U.S. 92 (1946); *ICC* v. *Southern Ry. Co.*, 543 F.2d 534 (5th Cir. 1976); *Federal Trade Comm'n* v. *Guignon*, 390 F.2d 323 (8th Cir. 1968). *See generally Report of the Attorney General's Task Force on Litigating Authority, supra; Memorandum for the Attorney General, supra.*[6]

[5] 28 U.S.C. § 516 provides:
   Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested,and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.
28 U.S.C. § 519 provides:
   Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States Attorneys, Assistant United States Attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.
[6] The Task Force Report and the 1982 Office of Legal Counsel Memorandum together provide an extensive and thorough discussion of the Attorney General's litigating authority for the Executive Branch, including its historical origins and development since 1789, the judicial construction of various "litigating authority" statutes, and the Memoranda of Understanding entered into by the Department of Justice to share litigating functions with "client" agencies.

## A. *The EEOC's Litigating Authority*

The EEOC's general litigating authority is found in the Commission's authorizing statute, 42 U.S.C. § 2000e-4. Subsection (b) of that section, which governs the appointment and functions of the Commission's General Counsel, provides in pertinent part:

> (b) (1) There shall be a General Counsel of the Commission appointed by the President, by and with the advice and consent of the Senate, for a term of four years. The General Counsel shall have responsibility for the conduct of litigation *as provided in sections 2000e-5 and 2000e-6 of this title.*
>
> (2) *Attorneys appointed under this section may, at the direction of the Commission, appear for and represent the Commission in any case in court, provided that the Attorney General shall conduct all litigation to which the Commission is a party in the Supreme Court pursuant to this subchapter.*

(Emphasis added.) In addition, subsection (g)(6) of § 2000e-4 authorizes the Commission

> to intervene in a civil action brought under section 2000e-5 of this title by an aggrieved party *against a respondent other than a governmental agency or political subdivision.*

(Emphasis added.)

Sections 2000e-5 and 2000e-6, which constitute the enforcement provisions for Title VII of the Act, set forth the functions and responsibilities of the EEOC and the Attorney General, respectively, for enforcement of the Act. Section 2000e-5 outlines the various procedures for filing charges of alleged discrimination with the Commission and the Commission's responsibilities for timely investigation and attempted conciliation of those charges. Subsection (f)(1) provides that if, after a given period of time, the Commission is unable to secure an acceptable conciliation agreement,

> the Commission may bring a civil action against any respondent *not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision*, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, *the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action* against the respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a

> civil action brought by the Commission or the Attorney General
> in a case involving a governmental agency, or political subdivision.

(Emphasis added.) If, after investigation, the Commission dismisses the charge or fails to file a civil action after the statutory period of reference has expired, or "the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision," the complainant is entitled to bring suit in his or her individual capacity. In such cases, upon timely application, the court may, in its discretion, permit the Commission, *or the Attorney General in a case involving a government, governmental agency, or political subdivision*, to intervene . . . upon certification that the case is of general public importance. 42 U.S.C. § 2000e-5(f)(1) (emphasis added).

The enforcement provisions contained in § 2000e-5 clearly limit the EEOC's authority to bring civil actions on behalf of Title VII complainants, or to intervene in such proceedings, to cases involving nongovernmental defendants. That is, by its very terms, the EEOC's litigation authority is limited to suits brought on behalf of private sector employees. *See General Telephone Co. of the Northwest* v. *EEOC*, 446 U.S. 318, 324 & n.6 (1980) (in describing the statutory scheme of Title VII, the Court stated that § 2000e-5(f)(1) "specifically authorizes the EEOC to bring a civil action against any respondent *not a governmental entity* upon failure to secure an acceptable conciliation agreement," and added that "[t]he Attorney General is authorized to bring suit against a governmental entity"). (emphasis added).[7] *See also United States* v. *Fresno Unified School Dist.*, 592 F.2d 1088 (9th Cir.), *cert. denied*, 444 U.S. 832 (1979).

This limitation, and those contained in § 2000e-6 discussed below, are incorporated into the general grant of litigating authority to the Commission in § 2000e-4(b).[8] Thus, to the extent that the Commission bases its claim of authority to appear in Title VII litigation against public sector employees on § 2000e-4(b)(2), it, in effect, claims that EEOC attorneys are not bound by the constraints imposed on the litigating authority of the General Counsel, under whose supervision they work. Such a construction would be contrary to Congressional intent,[9] the rule that exceptions to the Attorney General's plenary

---

[7] The Court further stated that the 1972 amendments to the Act expanded the Commission's enforcement powers beyond the conciliation authority granted to it in 1964 by "authorizing the EEOC to bring a civil action in federal district court *against private employers* reasonably suspected of violating Title VII." 446 U.S. at 325 (emphasis added).

[8] As indicated above, §§ 2000e-4(b)(1) and (2) grant the General Counsel "responsibility for the conduct of litigation *as provided in sections 2000e-5 and 2000e-6*," and attorneys "appointed under this section" the authority to, "at the direction of the Commission, appear for and represent the Commission in any case in court," except the Supreme Court. (Emphasis added.)

[9] The Conference Report to the 1972 amendments to Title VII of the Civil Rights Act indicates that:
> Both the House bill and the Senate amendment authorized the bringing of civil actions in Federal district courts in cases involving unlawful employment practices.
> *The Senate amendment provided that the Attorney General bring actions against state and local governments. As to other respondents, suits were to be brought by the Commission.* The Senate amendment permitted suits by the Commission or the Attorney General if the Commis-
> Continued

litigating authority are to be narrowly construed, and the plain language of the statute.

The second provision outlining the scope of the EEOC's authority to litigate Title VII suits, § 2000e-6, relates to the prosecution of "pattern or practice" suits.[10] That provision, as amended by § 5 of the President's Reorganization Plan No. 1 of 1978, 43 Fed. Reg. 19809, 92 Stat. 3781 (Feb. 23, 1978), vests the authority for "initiation of litigation with respect to State or local government, or political subdivisions under . . . [42 U.S.C. § 2000e-6] and all necessary functions related thereto, including investigations, findings, notice and an opportunity to resolve the matter without contested litigation" in the Attorney General. *See* 42 U.S.C. § 2000e-4 note (Supp. IV 1980).

---

[9] (. . . continued)

sion was unable to secure from respondent "a conciliation agreement acceptable to the Commission" while the House bill permitted the Commission to sue if it is unable to obtain "voluntary compliance." The Senate amendment permitted aggrieved persons to intervene in suits and allowed a private action if no case is brought by the Commission or Attorney General within 150 days. The House bill permitted a private action after 180 days. The Senate amendment allowed the General Counsel or Attorney General to intervene in private actions; the House bill permitted only the Attorney General to intervene. The Senate amendment permitted a private action in a case where the Commission entered into a conciliation agreement to which the aggrieved person was not a party (*i.e.* a signatory).

   The conferees adopted a provision allowing the Commission *or the Attorney General in a case against a state or local government agency*, to bring an action in Federal district courts if the Commission is unable to secure from the respondent "a conciliation agreement acceptable to the Commission." Aggrieved parties are permitted to intervene. They may bring a private action if the Commission or Attorney General has not brought suit within 180 days or the Commission has entered into a conciliation agreement to which such aggrieved party is not signatory. The Commission, or the Attorney General in a case involving state and local governments, may intervene in such private action.

H.R. Conf. Rep. No. 899, 92d Cong , 2d Sess. 17–18 (1972) (emphasis added).

[10] 42 U.S.C. § 2000e-6, as originally enacted in 1964, Pub. L. No. 88352, 78 Stat. 261 (July 2, 1964), provided that:

   (a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this title, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

In 1972 the Act was amended, Pub. L. No. 92–261, 86 Stat. 107 (Mar 24, 1972), to provide that:

   (c) Effective two years after [March 24, 1972], the functions of the Attorney General under this section shall be transferred to the [Equal Employment Opportunity] Commission, together with such personnel, property, records, and unexpended balances of appropriations, allocations, and other funds employed, used, held, available, or to be made available in connection with such functions unless the President submits, and neither House of Congress vetoes, a reorganization plan pursuant to chapter 9 of Title 5, inconsistent with the provisions of this subsection. The Commission shall carry out such functions in accordance with subsections (d) and (e) of this section.

42 U.S.C. § 2000e-6 (Supp. IV 1974).

   In 1978, pursuant to the President's Reorganization Plan No. 1, 92 Stat. 3781 (1978), the authority for prosecuting "pattern or practice" suits against governmental defendants under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-6, was transferred back to the Attorney General. Section 5 of the Reorganization Plan provides that:

Continued

In his Message to Congress conveying the Reorganization Plan, the President stated that the Plan was designed to "consolidate Federal equal employment opportunity activities" by reducing the number of federal agencies with enforcement responsibilities from fifteen to three,[11] and to "bring coherence to the equal employment enforcement effort." *Id.* With respect to the Attorney General's responsibility for public sector "pattern or practice" litigation, the President stated:

> The Plan I am proposing will not affect the Attorney General's responsibility to enforce Title VII against State or local governments or to represent the Federal government in suits against Federal contractors and grant recipients. *In 1972, the Congress determined that the Attorney General should be involved in suits against State and local governments. This proposal reinforces that judgment and clarifies the Attorney General's authority to initiate litigation against State or local governments engaged in a "pattern or practice" of discrimination.* This in no way diminishes the EEOC's existing authority to investigate complaints filed against State or local governments and, where appropriate, to refer them to the Attorney General. The Justice Department and the EEOC will cooperate so that the Department sues on valid referrals, as well as on its own or "pattern or practice" cases.

*Id.* (emphasis added). On June 30, 1978, the President signed Executive Order No. 12068, 43 Fed. Reg. 28971 (1978), implementing § 5 of the Plan to transfer

---

[10] (. continued)
Section 5. *Transfer of Public Sector 707 Functions*

> Any function of the Equal Employment Opportunity Commission concerning initiation of litigation with respect to State or local government, or political subdivisions under Section 707 of Title VII of the Civil Rights Act of 1964, as amended, (42 U S C. 2000e-6) and all necessary functions related thereto, including investigations, findings, notice and an opportunity to resolve the matter without contested litigation, are hereby transferred to the Attorney General, to be exercised by him in accordance with procedures consistent with said Title VII. The Attorney General is authorized to delegate any function under Section 707 of said Title VII to any officer or employee of the Department of Justice.

42 U.S C. § 2000e-4 note (Supp. IV 1980). There has been considerable disagreement in the courts as to whether the 1972 amendments, which transferred the Attorney General's functions regarding "pattern or practice" litigation to the EEOC (effective 1974), stripped the Attorney General of his authority to file "pattern or practice" suits against state and local governments until enactment of the 1978 Reorganization Plan. *See, e.g., United States* v. *City of Miami,* 664 F 2d 435, 437 & n.1 (5th Cir. 1981) (en banc); *United States* v. *Fresno Unified School District,* 592 F.2d at 1093. There is uniform agreement, however, on the proposition that the EEOC no longer has authority to file "pattern or practice" suits against state and local governments.

[11] The three agencies which retained Equal Employment Opportunity Enforcement responsibilities under the Reorganization Plan are the EEOC, the Labor Department and the Department of Justice. The respective enforcement functions of the agencies are clearly delineated in the Plan to prevent needless duplication and overlap. See 42 U.S.C. § 2000e-4 note (Supp. IV 1980).

to the Attorney General the authority, previously exercised by the EEOC, to prosecute "pattern or practice" suits against public sector defendants.[12]

As is evident from the foregoing analysis, a construction of § 2000e-6 that would grant the EEOC authority to litigate "pattern or practice" suits against State or local governments is contrary to the plain language of the 1978 amendments to the provision. That the EEOC's independent litigating authority in Title VII suits brought under §§ 2000e-5, 6 is limited to private sector suits is a position that is supported by the Department of Justice as well as the courts. *See United States* v. *City of Miami*, 664 F.2d 435, 437 (5th Cir. 1981) (en banc) ("[Defendants] contend[] that, after 1974, only the EEOC could institute . . . ["pattern or practice"] actions against public employers; however, Congress has now explicitly authorized only the Attorney General to do so.") (footnote omitted). *See also United States* v. *Commonwealth of Virginia*, 620 F.2d 1018, 1022 (4th Cir.), *cert. denied*, 449 U.S. 1021 (1980); *United States* v. *Fresno Unified School District*, 592 F.2d at 109293; *United States* v. *State of North Carolina*, 587 F.2d 625 (4th Cir. 1978), *cert. denied*, 442 U.S. 909 (1979).[13]

## II. Constitutional Considerations

Apart from the foregoing statutory analysis, which we believe demonstrates conclusively that the EEOC lacks authority to prosecute, intervene in, or otherwise appear in, public sector Title VII litigation on its own behalf, the constitutional considerations which bear on the issues raised by your request require such a result. These considerations stem from the fundamental premise that the whole of the Executive power, created by Article II of the Constitution, is vested exclusively in the President. *Myers* v. *United States*, 272 U.S. 52, 161–64 (1926). Included within the Executive power is the obligation to "take care that the laws be faithfully executed," art. II, § 3, which necessarily encompasses the authority to exert "general administrative control of those

---

[12] Executive Order No. 12068 provides:

*Transfer of Certain Functions to Attorney General.*

By virtue of the authority vested in me as President of the United States by the Constitution and laws of the United States, including Section 9 of Reorganization Plan Number 1 of 1978 (43 FR 19807), in order to clarify the Attorney General's authority to initiate public sector litigation under Section 707 of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. 2000e-6), it is ordered as follows:

1.1. *Section 707 Functions of the Attorney General.*

1–101. Section 5 of Reorganization Plan Number 1 of 1978 (43 FR 19807) shall become effective on July 1, 1978.

1–102. The functions transferred to the Attorney General by Section 5 of Reorganization Plan Number 1 of 1978 shall, consistent with Section 707 of Title VII of the Civil Rights Act of 1964, as amended, be performed in accordance with Department of Justice procedures heretofore followed under Section 707.

*See* 42 U.S.C. § 2000e-6 note (Supp. IV 1980).

[13] Although these decisions do not explicitly limit the Commission's authority to private sector suits, they stand for the proposition that the 1978 Reorganization Plan transferred to the Attorney General the full and complete authority to initiate Title VII litigation against state and local governments, leaving the EEOC with whatever Title VII litigation authority remained after the transfer, *i.e.*, suits against private employees.

executing the law," *i.e.*, the Executive officers. *Myers*, 272 U.S. at 164. There is no doubt that the EEOC, which performs functions that are "predominantly"[14] executive in nature — conciliation and the prosecution of civil law suits — is an Executive Branch agency whose members serve at the pleasure of the President and are removable without cause.[15] *See* "Reorganization Plan No. 1 of 1978 — Equal Employment Opportunity Comm'n," 2 Op. O.L.C. 69, 69 n.1 (1978).

Because it is an executive agency subject to the authority of the President, to permit the Commission to appear in a judicial proceeding in which the United States has exercised its authority to appear as a party (or has otherwise presented its views, *e.g.*, as an amicus), and present views on its own behalf which are independent of or contrary to those presented by the United States, would be inconsistent with the integrity of the Executive in the exercise of his Article II powers and responsibilities. Such a circumstance would, literally, put the Executive in the untenable position of speaking with two conflicting voices, abdicating his constitutional responsibility to "take Care that the Laws [are] faithfully executed."

In 1979, President Carter signed Executive Order No. 12146, by which he delegated to the Attorney General the Executive's authority for solving intrabranch disputes regarding legal matters. That order provides:

> 1–401. Whenever two or more Executive agencies are unable to resolve a legal dispute between them, including the question of which has jurisdiction to administer a particular program or to regulate a particular activity, each agency is encouraged to submit the dispute to the Attorney General.

> 1–402. *Whenever two or more Executive agencies whose heads serve at the pleasure of the President are unable to resolve such a legal dispute, the agencies shall submit the dispute to the Attorney General prior to proceeding in any court*, except where there is specific statutory vesting of responsibility for a resolution elsewhere.

Executive Order No. 12146 (July 18, 1979), *reprinted in* 28 U.S.C. § 509 note (emphasis added). The EEOC, which is an agency "whose head[s] serve at the pleasure of the President," is prohibited by § 1–402 from proceeding in any action, whether public sector or private sector litigation, in which the Attorney General has, in the exercise of the dispute resolution function delegated to him by the Executive, determined that the position of the United States is contrary to that represented by the Commission.

---

[14] *See Humphrey's Executor* v. *United States*, 295 U.S. 602, 624 (1935) (proposing a "functional" test for determining whether for purposes of the President's power of removal, an agency is independent, and therefore the President's power of removal of its member may be limited, or a part of the Executive Branch, in which case the members serve at the pleasure of the President). *See also Wiener* v. *United States*, 357 U.S. 349 (1958).

[15] Members of the Commission are appointed by the President, by and with the advice and consent of the Senate, for a term of five years 42 U.S.C. § 2000e-4(a) The General Counsel is appointed by the President, by and with the advice and consent of the Senate, for a term of four years. 42 U.S.C. § 2000e-4(b)(1).

## III. Conclusion

The EEOC's statutory litigating authority for the enforcement of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-5, 6, is, by its very terms, limited to civil actions against private sector employers, the responsibility for enforcement litigation against "government[s], governmental agenc[ies], or political subdivision[s]" having been vested in the Attorney General. This being the case, the Commission lacks litigation authority with respect to *Williams* v. *City of New Orleans*, which is a Title VII enforcement action against a governmental entity. As envisioned by the statutory scheme, the Attorney General has petitioned the court to present the views of the United States in this litigation.

Apparently the EEOC seeks to present its views to the court in the *Williams* case because it disagrees with the position taken by the Attorney General on behalf of the United States in the litigation; it is equally evident that as an executive agency subject to the supervision and control of the President, the Commission may not represent on its own behalf a position in court that is contrary to that taken by the Executive, through his delegee, the Attorney General. To permit otherwise would raise serious constitutional issues concerning the unity and integrity of the Executive. Accordingly, we conclude that the EEOC lacks authority to petition the court of appeals in *Williams* v. *City of New Orleans* for leave to file a brief or otherwise make an appearance.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

66